TRI-COUNTY STATE BANK of Chamberlain, S. D., Respondent

v.

DUNHAM et al., Appellants

(207 N.W.2d 214)

(File Nos. 11196, 11197. Opinion filed May 9, 1973)

Horace R. Jackson of Whiting, Lynn, Jackson, Shultz, Ireland & Lebrun, Rapid City, for defendant and appellant Dunham.

Lloyd J. Mahan, Parkston, for defendants and appellants Kaiser and Sticha.

R. E. Morgan, of Morgan & Fuller, Mitchell, for plaintiff and respondent.

HANSON, Justice.

This is an action by the Tri-County State Bank of Chamberlain, South Dakota to recover the sum of $56,093 remaining unpaid on disbursements made to Kaiser Enterprises, Inc., under a promissory note allegedly guaranteed by the defendants, L. T. Dunham, George Kaiser and Dorn Sticha. After a change of venue was granted removing the cause from Brule County to Minnehaha County the issues were submitted to a jury which returned a verdict for the Bank and against all defendants for the sum of $45,000 plus interest. Separate appeals from the judgment were perfected by Dunham in appeal #11196 and by Kaiser and Sticha in appeal #11197.

Henry Schelle is president of the Tri-County Bank. Sometime prior to July 1969 the Bank acquired by foreclosure and

repossession an inventory of parts from the Omni Design Corporation after it failed in the snowmobile manufacturing business at Fort Thompson, South Dakota. The Bank wanted to sell this inventory and it also desired to have a snowmobile manufacturing plant reestablished at Fort Thompson which would employ Indian labor. About this same time Kaiser Enterprises had acquired a stock of snowmobile parts and inventory from another source and intended to establish a business in Sioux Falls.

During the latter part of July, 1969, defendants Kaiser and Sticha met with Schelle at the Bank in Chamberlain. After some conversation they inspected the Omni inventory at Fort Thompson and Kaiser and Sticha indicated an interest in its purchase. They also indicated an interest in locating their snowmobile operation at Fort Thompson. The possibility of obtaining a Small Business Administration loan to pay for the Omni inventory and to provide capital for the business was also discussed. Shortly afterwards Sticha and Schelle conferred with the Small Business Administration officials in Sioux Falls about obtaining a guaranteed loan.

On August 24, 1969, an organizational meeting of the directors of Kaiser Enterprises was held in Minneapolis at which time the following corporate officers were elected: Dorn H. Sticha, President; L. T. Dunham, Vice President; and George Kaiser, Jr., Secretary and Treasurer.

On August 28, 1969, Sticha and Dunham met with Schelle at the Chamberlain bank. Sticha, as President of Kaiser Enterprises, executed a Small Business Administration form note in the amount of $175,000 payable to the Bank. Likewise, Sticha, on behalf of Kaiser Enterprises, executed a Security Agreement granting a security interest to the Bank on all inventory, equipment, furniture, fixtures and accounts of the snowmobile business located at Sioux Falls and Fort Thompson. Also Sticha and Dunham each signed and delivered to the Bank SBA Loan Guaranties. The Bank later received a similar Loan Guaranty from George Kaiser. During the course of the meeting Schelle filled out and signed an application for a Small Business

Administration Loan Guaranty. The Small Business Administration shortly afterwards approved the loan subject to certain conditions. Some of the conditions were never completed or complied with by the defendants, such as: SBA Form Guaranties executed by defendants and their wives; assignment of life insurance policies; and certified financial statements.

During the August 28th meeting in the presence of Dunham and on behalf of Kaiser Enterprises Sticha executed a promissory note payable to the Bank in the amount of $25,000. The note was entered on the Bank's liability ledger and the amount of the note was credited to the Kaiser Enterprises checking account. Sticha later executed two other similar notes, on behalf of Kaiser Enterprises, in the amount of $15,000 each. One note was dated October 7, 1969, and the other was dated October 29, 1969. The amounts of both were credited by the Bank to the Kaiser Enterprises account and entered on the Bank's liability ledger.

Kaiser Enterprises moved its snowmobile business to Fort Thompson, but its operation ended in financial failure. Thereafter, the Tri-County Bank took possession of the remaining inventory under its security agreement and brought this action to recover the balance due on disbursements made to Enterprises.

Defendants' assigned errors all relate to the extent of their liability as guarantors. They contend, as a matter of law, their SBA form guaranties limit their liability to the initial SBA form note in the amount of $175,000 which was never entered on the Bank's liability ledger and no funds were disbursed thereunder. It was error, therefore, to allow the jury to extend their restricted guaranties to the three subsequent notes totaling $55,000 which were merely general obligations of Kaiser Enterprises.

Our review of the record in the light most favorable to the verdict reveals ample evidence from which the jury could find the three advances totaling $55,000 constituted interim financing to Kaiser Enterprises made by the Tri-County Bank pursuant to and under the terms of the SBA note, Exhibit 2, which was guaranteed by each of the defendants.

The original SBA form note, Exhibit 2, provides that Kaiser Enterprises promises to pay to the Tri-County Bank $175,000 with interest on unpaid principal "computed from the date of each advance".

The guaranty forms, Exhibits 8, 14 and 17, signed by each of the defendants state in part that "In order to induce Tri-County State Bank (Bank) to make a loan or loans, or renewal or extension thereof, to Kaiser Enterprises (Debtor), the undersigned hereby unconditionally guarantees to Bank, its successors and assigns and to the Small Business Administration (SBA) as its interests may appear, the due and punctual payment when due * * * of the principal and interest on and all other sums payable, or stated to be payable, with respect to the note of the Debtor, made by the Debtor to Bank, dated 8-28-69, in the principal amount of $175,000.00". The Guaranty Contracts further significantly provide that "Such note, and the interest thereon and all other sums payable with respect thereto are hereinafter collectively called 'Liabilities.' " By signing this Guaranty Form each of the defendants specifically waived "notice of the incurring by the Debtor at any time of any of the Liabilities".

The Application for the Small Business Administration loan provided that the loan to Kaiser Enterprises was for the following purposes:

| | |
|---|---:|
| Pay off interim financing | $130,000.00 |
| Plant location | 5,000.00 |
| Mach. & Equip. | 11,700.00 |
| Inventory | 17,300.00 |
| Working Capital | 11,000.00 |
| | $175,000.00 |

The Security Agreement which was executed at the meeting in the Chamberlain bank on August 28, 1969, was given "to secure the payment of One Hundred Seventy Five Thousand and no/100 Dollars ($175,000.00) as provided in the note or notes of Debtor dated 8-28-69 and also payment and performance of any and all other liabilities of Debtor to Secured Party, direct or

indirect, absolute or contingent, due or to become due, now existing or hereafter arising". The secured property was repossessed under this Agreement after Kaiser Enterprises failed in business and defaulted on its loans to the Bank.

It is evident that when the loan transaction was consummated on August 28, 1969, all of the parties contemplated the Bank would make advances to Kaiser Enterprises from time to time under the SBA note (Ex. 2). The note itself reflects this intent by providing for interest to be computed "from the date of each advance". Afterwards, the Bank advanced $55,000 to the corporation as evidenced by the three bank form notes, Exhibits 5, 6 and 7. The first was made on August 28, 1969, in the amount of $25,000; the second on October 7, 1969, in the amount of $15,000; and the third on October 29, 1969, in the amount of $15,000.

The first advance of $25,000 was made by the Bank contemporaneously with the execution of the SBA note, the guaranties, and the Security Agreement by defendants on August 28, 1969. Sticha personally signed all of the notes on behalf of Kaiser Enterprises, as its President. Dunham was personally present at the Bank on August 28, 1969, when both the SBA note and note for $25,000 were signed. With reference to the $25,000 note Dunham testified as follows:

"Q. And that same time that you were present, you were aware that a $25,000 advance was made to the corporation?

\* \* \* \* \* \*

A. I hadn't paid much attention to it. I thought it was a $15,000 note.

Q. But you knew that there was an advance being made?

A. I knew that Mr. Sticha and Mr. Schelle had talked about some kind of an advance on the thing. * * *"

█ It is immaterial that the guaranty by the Small Business Administration never became effective. Defendants cannot take advantage of their own default in this respect by their failure to comply with the conditions imposed by the Small Business Administration.

Defendants were all stockholders, directors, and officers of the Kaiser Enterprises Corporation. Each had a direct personal financial interest in the loan transaction with the Bank. Their liability, as guarantors, was properly allowed to be determined in the light of all the facts and circumstances surrounding the loan transaction. A contract of guaranty, like any other contract, should be fairly and reasonably construed in relation to the attendant facts in order to ascertain and effectuate the intention of the parties. As quoted with approval in Birken, Jr. v. Tapper, 45 S.D. 600, 189 N.W. 698, "A safe rule of construction of a guaranty is to give the instrument that effect which shall best accord with the intentions of the parties, as manifested by the terms of the guaranty, taken in connection with the subject-matter to which it relates; neither enlarging the words beyond their import in favor of the creditor, nor restricting them in aid of the surety."

█ The entire financial transaction between the Bank and defendants revolved around an SBA guaranteed note in the amount of $175,000. No other loans were ever contemplated. Certainly, there is no evidence anyone intended the Bank would loan the corporation $230,000, i. e., $175,000 plus $55,000. Under the circumstances, the jury could reasonably find the three notes totaling $55,000 represented interim financing in the form of advances made "with respect to" the SBA note guaranteed by each of the defendants.

Finding no error in the various rulings of the trial court, the judgment appealed from is affirmed.

BIEGELMEIER, C. J., WINANS and WOLLMAN, JJ., and HERSRUD, Circuit Judge, concur.

HERSRUD, Circuit Judge, sitting in the absence of DOYLE, J.